# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT SCHMIDT, RUSSELL ADAMS, and JASON TAYLOR, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JAGUAR LAND ROVER AUTOMOTIVE PLC and JAGUAR LAND ROVER NORTH NORTH AMERICA, LLC,<br><br>    Defendants. | Civil Action No. 2:18-cv-08528-CCC-JBC |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF AWARD OF ATTORNEYS FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENTS CLASS ACTION SETTLEMENT

**KANTROWITZ, GOLDHAMER  
& GRAIFMAN, P.C.**  
135 Chestnut Ridge Road, Suite 200  
Montvale, NJ 07645

**THOMAS P. SOBRAN, P.C.**  
7 Evergreen Lane  
Hingham, MA 02043  
(admitted *pro hac vice*)

*Class Counsel for Conditionally  
Certified Class*

## <u>TABLE OF CONTENTS</u>

Page

I. PRELIMINARY STATEMENT .................................................................................1

II. PROCDURAL HISTORY OF THE CASE ..................................................................4

III. THE SETTLEMENT TERMS ARE FAIR, REASONABLE
     AND ADEQUATE.............................................................................................5

     A.  The Benefits to The Class Under The Settlement ...................................6
     B.  Notice to The Settlement Class.............................................................13

IV. THE REQUESTED ATTORNEY'S FEES AND EXPENSES
     SHOULD BE AWARDED................................................................................14
     A.  The Requested/Agreed Upon Attorneys' Fees, Expenses, and Incentive Awards
         are Reasonable and Should be Awarded...............................................14
     B.  The Requested Award Is Presumptively Fair and Reasonable since it will not
         Diminish the Settlement Fund...............................................................16
     C.  The Factors Governing Approval of Attorneys' Fees and Expenses Support the
         Requested Amount.................................................................................19
         1.  Class Counsel Obtained a Substantial Benefit for Settlement
             Class Members................................................................................19
         2.  Skill and Efficiency of Counsel:  Class Counsel Brought This Matter to an
             Efficient Conclusion.......................................................................22
         3.  The Complexity and Duration of the Litigation..............................24
         4.  Class Counsel Undertook the Risk of Non-Payment.......................25
         5.  Class Counsel Devoted Significant Time to this Case.....................26
         6.  Awards in Similar Cases..................................................................29
     D.  The Value of the Settlement and of the Benefit Conferred
         Demonstrates the Fee should be Approved............................................30
     E.  Class Counsel's Lodestar Demonstrates the Requested Fees and Expenses are Fair
         and Reasonable......................................................................................32

V. THE CLASS REPRESENTATIVE SERVICE AWARDS
    SHOULD BE APPROVED...............................................................................35

VI. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
     APPROVED..................................................................................................37

   VII. CONCLUSION.............................................................................................38

i

# <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Abrams v. Lightolier, Inc.,*
  50 F.3d 1204 (3d Cir. 1995) ................................................................. 37

*Beneli v. BCA Fin. Servs., Inc.,*
  324 F.R.D. 89 (D.N.J. 2018) ................................................................. 20

*Bernhard v. TD Bank, N.A.,*
  2009 WL 3233541 (D.N.J. 2009) .......................................................... 36

*Bezio v. Gen. Elec. Co.,*
  655 F. Supp. 2d 162 (N.D.N.Y. 2009)................................................... 17

*Bryan v. Pittsburgh Plate Glass Co.,*
  494 F.2d 799 (3d Cir. 1974) ................................................................. 24

*Carroll v. Stettler,*
  2011 U.S. Dist. LEXIS 121185 (E.D.Pa. Oct. 19, 2011).........................37

*Cohn v. Nelson,*
  375 F. Supp. 2d. 844 (E.D. Mo. 2005) ................................................. 18

*Cullen v. Whitman Medical Corp.,*
  197 F.R.D 136 (E.D. Pa, 2000). ............................................................ 36

*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (W.D. Tex. 2007)......................................................... 18

*Dewey v. Volkswagen of America,*
  728 F.Supp.2d 546 (D.N.J. 2010).......................................................... 33

*Dupler v. Costco Wholesale Corp.,*
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................... 17

*Gunter v. Ridgewood Energy Corp.,*
  223 F.3d 190 (3d Cir. 2000) .........................................................*passim*

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir.1998) ......................................................... 26, 29

*Hensley v. Eckhart,*
  461 U.S. 424 (1983) ..................................................................... 15, 16

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  263 F.R.D. 226 (E.D.Pa. 2009) ................................................................ 36

*In re Apple Computer, Inc. Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ........................................... 18

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) .................................................................. 22

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................... 19, 20

*In re Gen. Motors*,
  55 F.3d 768 (E.D. Pa. 2000) .................................................................... 24

*In re Ikon Office Solutions, Inc. Securities Litigation*,
  194 F.R.D. 166 (E.D. Pa. 2000) .............................................................. 23

*In re LG/Zenith Rear Projection Television Class Action Litigation*,
  2009 WL 455513 (D.N.J. Feb. 18, 2009) ................................................. 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C.2002) .................................................................. 36

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................... 24

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  106 F. Supp. 2d 721 (D.N.J. 2000) .......................................................... 17

*In re Prudential-Bache Energy Income Partnerships Securities Litigation*,
  1994 WL 202394 (E.D. La. May 18, 1994) .............................................. 25

*In re Safety Components Int'l, Inc.*,
  166 F. Supp. 2d 72 (3d Cir. 2001) ........................................................... 37

*In re Schering-Plough/Merck Merger Litig.*,
  2010 WL 1257722 (D.N.J. Mar. 26, 2010) ......................................... 18, 20

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012) ................................................ 25

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................. 17

*In re Viropharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016).................................................. 24

*In re Volkswagen & Audi Warranty Extension Litig.*,
692 F.3d 4 (1st Cir. 2012)........................................................................ 29

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015)....................................................... 29

*In re Warner Communications Securities Litigation*,
618 F. Supp. 735 (S.D.N.Y. 1985) .................................................. 23, 25

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ............................................................ 18

*Ins. Brokerage Antitrust Litig.*,
2007 WL 1652303 (D.N.J. June 5, 2007)............................................... 17

*Johnson v. Georgia Hwy. Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ............................................................ 16, 17

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987) .......................................................... 17

*McBean v. City of New York*,
233 F.R.D. 377 (S.D.N.Y. 2006)................................................. 15, 17, 19

*McGee v. Continental Tire North America*, Inc.,
2009 WL 539893 (D.N.J. 2009) ............................................................. 36

*Merola v. Atlantic Richfield Co.*,
515 F.2d 165 (3d Cir. 1975) ................................................................... 20

*Mirakay v. Dakota Growers Pasta Co., Inc.*,
2014 WL 5358987 (D.N.J. Oct. 20, 2014) .............................................. 15

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ............................................................................... 33

*Pro v. Hertz Equipment Rental Corp.*,
2013 WL 3167736 (D.N.J. June 20, 2013)............................................. 15

*Rossi v. Procter & Gamble Co.*,
2013 WL 5523098 (D.N.J. Oct. 3, 2013) ............................................... 15

*Rowe v. E.I. DuPont de Nemours & Co.*,
  2011 WL 3837106 (D.N.J. Aug. 26, 2011) ............................................................ 20

*Saini v. BMW of North America, LLC*,
  2015 WL 2448846 (D.N.J. May 21, 2015) .............................................................32

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F.Supp.2d 941 (E.D. Tex. 2000) ...................................................................... 23

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007) ................................................................... 30

*Weber v. Gov. Employees. Ins. Co.*,
  U.S. Dist. LEXIS 91322, *53 (D.N.J. Sep. 30, 2009) ............................................18

**Statutes**

Cal. Civ. Code Section 1793.2(2)(C) ...................................................................... 11, 12
Cal. Civ. Code Section 1793.2(2)(C) or (ii) ............................................................. 11

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................ 16

## I. PRELIMINARY STATEMENT

This brief is submitted in support of the unopposed motion by Plaintiffs for an award of attorneys' fees and reimbursement of expenses.  The motion also seeks payment of a service award to the three plaintiffs, Robert Schmidt, Russell Adams and Jason Taylor (hereinafter "Plaintiffs" or "Class Representatives"), who also serve as the Settlement Class Representatives.[1]  The parties entered into the formal Settlement Agreement ("Agreement") executed on or about June 18, 2021 that includes both a reimbursement program for past repairs and warranty extension for future repairs as benefits of the settlement. After agreeing on the terms of the substantive settlement, the parties negotiated at arms' length attorneys' fees through a private mediator and the Court (Magistrate James B. Clark).  The fee and expense award finally agreed upon was seven hundred thousand dollars ($700,000.00).  On August 6, 2021, this Court entered the Order Granting Preliminary Approval of the Class Action Settlement (hereinafter "Preliminary Approval Order"), preliminarily approving the Agreement, conditionally certifying the class and approving the Settlement Class Notice to be sent out to Settlement Class Members. (Dkt. No. 69).

A copy of the Agreement is annexed as Exhibit 1 to the Declaration of Gary S. Graifman in Support of Preliminary Approval of the Class Action Settlement filed

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Agreement.

June 28, 2021 (ECF Doc. 66-3).

This conditionally certified class action involves 2012 through and including 2014 model year Land Rover passenger motor vehicles equipped with the eight-cylinder multi-valve 5.0 liter AJ-V8 Gen III direct injection engines (hereinafter collectively "Class Vehicles" or "Class Vehicle").[2]

As a result of the alleged engine defects described in the initial and second amended complaint, class engines are predisposed to premature primary chain assembly failures. The primary chain (a/k/a the "timing chain") assemblies connect and synchronize the engine's camshafts and crankshaft, which in turn controls the opening and closing of the valves in the engine's combustion chambers. The primary chain assemblies ensure the engine operation occurs in the precise, synchronized manner necessary for the engine to properly function. A primary chain assembly partial or complete failure allows the chain to skip teeth on the chain sprockets. This occurrence causes the camshafts and crankshaft to fall out of synchronization and lose power or cause the engine's pistons and valves to violently collide. One indicator of impending chain failure is excessive timing chain noise caused by a loose and/or worn primary chain.

This Agreement addresses the conduct complained of in the litigation and

---

[2] Class vehicles include the LR4 and Range Rover Sport vehicles sold and/or leased in the United States.

provides valuable benefits to the owners ("Settlement Class Members") of in excess of 50,000 Class Vehicles in the United States.

The Agreement contains two components of the benefits provided. *First*, there is a reimbursement program available to Settlement Class Members who incurred eligible out-of-pocket costs incurred as a result of a repair or replacement of timing chains and/or timing chain tensioners and tensioner levers, subject to the time and mileage requirements set forth in the Agreement and, if applicable, other monetary limitations stated therein. *Second*, under the Agreement's prospective warranty extension benefits, Settlement Class Members receive an extension of JLRNA's New Vehicle Limited Warranty to cover repairs or replacements, performed by authorized Land Rover retailers only, of timing chains and/or timing chain tensioners and tensioner levers in Class Vehicles for up to eight (8) years and 100,000 miles, subject to certain specified time and mileage parameters.[3]

Additionally, JLRNA will pay the cost of notice to the class and for claims administration (Settlement Agreement, § 5.1). JLRNA will also pay and not oppose an award of attorneys' fees and expenses up to but not exceeding $700,000.00 in attorneys' fees and expenses. Class Counsel have agreed not to seek attorneys' fees and expenses in excess of agreed upon amount of $700,000.00 (Settlement Agreement, § 13.2). The parties further agreed that each Settlement Class

---

[3] The NVLW prior to the Settlement is for four (4) years or 50,000 miles, whichever occurs first.

Representative may receive a Service Payment in the amount of $2,000.00 ($6,000.00 in the aggregate), pursuant to §13.1 of the Agreement.

Finally, owners and lessees of Class Vehicles that had in excess of eight (8) years or 100,000 miles (whichever occurred first), at the time of the Settlement notice dissemination will not be subject to the release of liability in the Agreement.

## II.  PROCEDURAL HISTORY OF THE CASE

On April 29, 2018, after months of pre-suit investigation, speaking with potential class members, and ascertaining the nature of the class vehicle defects, plaintiff Robert Schmidt, individually and on behalf of all other similarly situated, filed the initial class action complaint against Jaguar Land Rover Automotive PLC and JLRNA, in the U.S. District Court for the District of New Jersey. ECF Dkt. No. 1.  On July 31, 2018, JLRNA, filed its Motion to Dismiss. ECF Dkt. No. 12.  Plaintiff opposed the motion on September 17, 2018. ECF Dkt. No. 23.

After continuing discussions among the Parties and investigation by Class Counsel, the plaintiff sought leave to amend the initial complaint.  On October 15, 2018, the Parties entered into a Stipulation and Consent Order Establishing a Schedule for Amending the Class Action Complaint and for responding to that amendment. ECF Dkt. No. 29.  The Amended Complaint was filed on October 31, 2018.  ECF Dkt. No. 30.  In the same stipulation, approved by the Court, JLRNA withdrew its motion to dismiss as part of the negotiation process.  Over the duration

of approximately another year, the Parties continued to negotiate and cooperate so that counsel could concentrate their efforts on negotiation rather than litigation.

On October 24, 2019, the Parties, including the newly added plaintiffs, entered into a Stipulation and Consent Order Extending Defendant Jaguar Land Rover North America, LLC's Deadline to Respond to the First Amended Class Action Complaint and Schedule a Settlement Conference. ECF Dkt. No. 52.  At this juncture, the Parties had progressed from negotiation to mediation.  This second stipulation included a statement that the Parties had agreed on a term sheet.  Two months of further intermittent mediation followed.  On January 13, 2020, the Parties entered into a Stipulation and Consent Order Staying Defendant Jaguar Land Rover North America, LLC's Deadline to Respond to the First Amended Class Action Complaint. ECF Dkt. No. 54.  In that stipulation, JLRNA's obligation to respond to the First Amended Class Action Complaint was stayed.

On June 28, 2021, Plaintiffs filed their Motion for, *inter alia*, Preliminary Approval of Class Action Settlement and Conditional Certification of Settlement Class (ECF Dkt. No. 66).  The Court granted the motion on August 6, 2021 (ECF Dkt. No. 69).

## III.  THE SETTLEMENT TERMS ARE FAIR, REASONABLE AND ADEQUATE

The Settlement Class is defined in the Agreement as:

> All current and former owners and lessees of Class Vehicles who are or were the registered owners or lessees of such vehicles, on or before the date that this Settlement receives preliminary approval, to the extent that such registrations were in the District of Columbia or one of the fifty (50) states of the United States, except that the following are excluded: (i) owners and lessees who first purchased or leased a Class Vehicle nine or more years after such Class Vehicle was registered for the first time; (ii) owners and lessees of a Class Vehicle on which a timing chain and/or timing chain tensioner was first replaced when such Class Vehicle had been in service for more than eight years or driven for more than 100,000 miles; (iii) any judge assigned to the Litigation; (iv) Persons, if any, who prior to the date of preliminary approval, settled with and released JLRNA or any other Releasee from any of the released claims as set forth in Paragraph 14.2; (v) financial institutions; and (vi) JLRNA.

Settlement Agreement, § 2.1.

## A.    THE BENEFITS TO THE CLASS UNDER THE SETTLEMENT

Under the Agreement, there is no upper limit to the aggregate amount that will be available to pay Settlement Class Members' valid claims.  To qualify for the reimbursement benefit under the Agreement, Settlement Class Members must merely timely submit a completed Claim Form by the Claim Deadline (*see* §§ 4 and 5.2.1 of the Agreement) together with the qualifying documents to verify the claim, as required under the Settlement  This can be performed through a portal on the Settlement Website or by mail.

There is also a warranty extension benefit for the timing chain assemblies. Effective on the date Class Notice (defined in § 10 of the Agreement) is mailed,

JLRNA shall extend its New Vehicle Limited Warranty to cover repairs or replacements, to be performed by authorized Land Rover retailers only, of timing chains, chain tensioners and tensioning levers in Class Vehicles, for up to eight years and 100,000 miles, subject to the time and mileage parameters set forth below (Settlement Agreement, § 3.2.1.1):

| Year | Mileage Range | Warranty Coverage Percentage |
|------|---------------|------------------------------|
| 6 | 50,001 to 70,000 | 60% |
| 7 | 70,001 to 85,000 | 50% |
| 8 | 85,001 to 100,00 | 40% |

To qualify for the 60% level of extended warranty coverage, the Class Vehicle must both have been in service for six years or less and have been driven for 70,000 miles or less at the time the (1) timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected in a document contemporaneous with such failure or (2) timing chain, tensioner and/or tensioning lever is repaired or replaced (whichever occurs first).

To qualify for the 50% level of extended warranty coverage, the Class Vehicle must both have been in service for seven years or less and have been driven for 85,000 miles or less at the time the (1) timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected

in a document contemporaneous with such failure or (2) timing chain, tensioner and/or tensioning lever is repaired or replaced (whichever occurs first).

To qualify for the 40% level of extended warranty coverage, the Class Vehicle must both have been in service for eight years or less and have been driven for 100,000 miles or less at the time the (1) timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected in a document contemporaneous with such failure or (2) timing chain, tensioner and/or tensioning lever is repaired or replaced (whichever occurs first).

In addition, there is a warranty extension for engine damage.  Effective on the date Class Notice (defined in § 10 of the Agreement) is mailed, JLRNA shall extend its New Vehicle Limited Warranty to cover repairs or replacements, to be performed by authorized Land Rover retailers only, of engines that are damaged due to timing chain, tensioner and/or tensioning lever failures in Class Vehicles, for up to eight years and 100,000 miles, subject to the time and mileage parameters set forth below (Settlement Agreement, § 3.2.2.1):

| Year | Mileage Range | Warranty Coverage Percentage |
|------|---------------|------------------------------|
| 6 | 50,001 to 70,000 | 30% |
| 7 | 70,001 to 85,000 | 25% |
| 8 | 85,001 to 100,00 | 20% |

To qualify for the 30% level of extended warranty coverage, the Class Vehicle must both have been in service for six years or less and have been driven for 70,000 miles or less at the time the (1) engine damage due to a timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected in a document contemporaneous with such damage or (2) engine is repaired or replaced due to a timing chain, tensioner and/or tensioning lever failure (whichever occurs first).

To qualify for the 25% level of extended warranty coverage, the Class Vehicle must both have been in service for seven years or less and have been driven for 85,000 miles or less at the time the (1) engine damage due to a timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected in a document contemporaneous with such damage or (2) engine is repaired or replaced due to a timing chain, tensioner and/or tensioning lever failure (whichever occurs first).

To qualify for the 20% level of extended warranty coverage, the Class Vehicle must both have been in service for eight years or less and have been driven for 100,000 miles or less at the time the (1) engine damage due to a timing chain, tensioner and/or tensioning lever failure is diagnosed by an authorized Land Rover retailer, which diagnosis is reflected in a document contemporaneous with such damage or (2) engine is repaired or replaced due to a timing chain, tensioner and/or

tensioning lever (whichever occurs first).

While there is no upper limit to the amount that will be available to pay Settlement Class Members' valid overall claims, individual reimbursement is a percentage of the amount paid for timing chain, tensioner and/or tensioning lever repairs, depending on mileage and years in service. Also, there is a monetary cap which applies to reimbursement of Past Repairs or Replacements if they were performed by an Independent Repair Facility ("IRF") (*e.g.,* not an authorized Land Rover dealer) of Timing Chain Assemblies and/or engines that are damaged as a result of timing chain, tensioner and/or tensioning lever failures. The amount of this cap is $4,000.00 for a timing chain or tensioner repair or replacement (Settlement Agreement, § 3.2.1.2). For engine repair or replacement, the amount of the cap is: (i) $8,000.00, if the Past Repair or Replacement was performed when the Class Vehicle had been in service for six years or less and had been driven for 70,000 miles or less; (ii) $6,500.00, if the Past Repair or Replacement was performed when the Class Vehicle had been in service for seven years or less and had been driven for 85,000 miles or less; and (iii) $5,000.00, if the Past Repair or Replacement was performed when the Class Vehicle had been in service for eight years or less and had been driven for 100,000 miles or less.

For a Past Repair or Replacement performed by an IRF of an engine damaged as a result of a timing chain, tensioner and/or tensioning lever failure, JLRNA shall

reimburse the lesser of (1) the actual out-of-pocket costs incurred multiplied by the maximum reimbursement percentage set forth in the tables above and the aggregate monetary cap described above.

The Agreement also provides that if the value of the Class Vehicle is *less* than the amount that JLRNA would have to pay as reimbursement, as specified above to repair or replace the engine under warranty, JLRNA, at its sole discretion, based on a schedule in the Agreement, may take possession of a Class Vehicle and reimburse the Settlement Class Member and/or lessor (*e.g.,* "buy back" the vehicle), using the following restitution formula:  The amount of the payment shall be *the greater of* (i) the value of the Class Vehicle based on the restitution formula set forth in California's Lemon Law, Cal. Civ. Code Section 1793.2(2)(C) or (ii) the amount remaining, if any, on the owner's financing loan for the vehicle's purchase.  In other words, if the owner has a loan financing the vehicle which is greater than the value of the vehicle, then Land Rover is to pay that loan amount.  Settlement Agreement, § 3.1.2.2.

As noted, the purchase price of the Class Vehicle, subject to a mileage offset according to the Class Vehicle's mileage on the date that the Settlement Class Member permanently surrenders possession of the Class Vehicle to an authorized Land Rover retailer (or any earlier date that JLRNA shall designate at its sole discretion) is based on the restitution formula set forth in California's Lemon Law,

Cal. Civ. Code Section 1793.2(2)(C).[4][5]

The extended warranties set forth above are transferable to subsequent owners and lessees of Class Vehicles subject to the Settlement's time in service and mileage limitations.

JLRNA is solely responsible for the cost of the settlement/claims administrator, Angeion Group ("Settlement Administrator"), and will pay all administration expenses which includes effectuating the notice plan and administration of the Settlement. Settlement Agreement, § 5.

Finally, the Agreement provides for JLRNA to pay service awards and attorneys' fees. The service awards are to be paid by JLRNA to Class Representatives in a one-time payment in the aggregate amount of $6,000.00 to be distributed as follows: $2,000.00 to named plaintiff Robert Schmidt; $2,000.00 to

---

[4] Cal. Civ. Code Section 1793.2(2)(C) states in pertinent part:

When restitution is made pursuant to subparagraph (B), the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. Nothing in this paragraph shall in any way limit the rights or remedies available to the buyer under any other law.

[5] The value of a Class Vehicle that is leased by a Settlement Class Member is deemed to be equal to the amount of the remaining lease balance on the Class Vehicle as of the date of the timing chain failure plus the amount of the residual value of the Class Vehicle to the lessor.

named plaintiff Jason Taylor; and $2,000.00 to named plaintiff Russell Adams.

## B.   NOTICE TO THE SETTLEMENT CLASS

The Parties negotiated and agreed upon a notice program which provides the best practicable notice under the circumstances.  A copy of the Notice of Class Action Settlement substantially in the form attached to the Agreement as Exhibit C (the "Class Notice"), was mailed by first class mail to every Class Member who was reasonably ascertainable by using IHS Markit, formerly known as R.L. Polk, (or a similar vendor agreeable to the Parties), who compiled the list of class members by requesting vehicle registration information from all fifty (50) States and the District of Columbia.  Such mailing was completed, at the expense of JLRNA, on December 6, 2021 (e.g., not less than forty-five (45) days prior to the date by which objections to the Agreement and requests for exclusion from the Settlement Class are due).

The Settlement Administrator has also established and will maintain the website dedicated to the Settlement ("Settlement Website"), which is www.schmidttimingchainsettlement.com, and a toll-free customer service number that Class Members may call to access recorded messages and to speak with a live customer service person.

The Class Notice provides a procedure for Class Members to exclude themselves from the Settlement Class by mailing a completed request for exclusion. To the extent that a valid request for exclusion has not been timely received with

respect to a particular Class Member, such Class Member shall be a Settlement Class Member and shall be bound by the terms of the Agreement and every order or judgment entered relating to the Agreement.

The Class Notice also provides a procedure for Class Members to object to the Settlement terms set forth in the Agreement and/or to the attorneys' fees, expenses, and incentive awards to which the Parties have agreed and for which Class Counsel is petitioning the Court.

## IV.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES SHOULD BE AWARDED

### A.   The Requested/Agreed Upon Attorneys' Fees, Expenses, and Incentive Awards are Reasonable and should be Awarded.

The parties agreed to a fee request of Plaintiffs' attorneys of  $700,000.00. Settlement Agreement, § 13.2.  The fee award is entirely separate from and does not diminish in any way class relief.  *See* Joint Declaration of Gary S. Graifman and Thomas P. Sobran in Support of an Award of Attorneys' Fees, Reimbursement of Expenses and Award of Class Representative Service Payments ("Jt. Decl.") submitted herewith at ¶ 25.  For the reasons set forth below, this award of attorneys' fees, expenses, and service awards is reasonable and should be approved by the Court.

The award of attorneys' fees in a class action settlement is within the Court's

discretion. *Rossi v. Procter & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013).   The Supreme Court has recognized a preference of allowing litigants to resolve fee issues through agreement. *Hensley v. Eckhart*, 461 U.S. 424, 437 (1983). In this district, courts routinely approve agreed-upon attorney's fees when the amount is independent from the class recovery and does not diminish the benefit to the class. *See Mirakay v. Dakota Growers Pasta Co., Inc.*, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *Rossi,* 2013 WL 5523098, at *9; *Pro v. Hertz Equipment Rental Corp.*, 2013 WL 3167736, at *6 (D.N.J. June 20, 2013); *In re LG/Zenith Rear Projection Television Class Action Litigation*, 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009).   Where the attorneys' fees are paid independent of the award to the class, the court's fiduciary role in overseeing the award is greatly reduced because there is no potential conflict between the attorneys and class members. *Mirakay*, 2014 WL 5358987, at *11; *Rossi,* 2013 WL 5523098, at *9 (citing *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)).

"While the Court is not bound by the agreement between the parties, the fact that the award was the product of arms-length negotiations weighs strongly in favor of approval." *Rossi*, 2013 WL 5523098, at *10.   "[T]he benefit of a fee negotiated by the parties at arm's length is that it is essentially a market-set price—[Defendants] ha[ve] an interest in minimizing the fee and Class Counsel have an interest in maximizing the fee to compensate themselves for their work and assumption of

risk." *Id.*  Here, these standards clearly weigh in favor of approving the requested fee.  The agreed upon fee agreement was the product of protracted difficult negotiations, which occurred only after the parties had reached agreement on the substantive relief to the class.  The Settlement term sheet, setting forth an agreement in principle, was signed on or about June 25, 2019 (Jt. Decl., ¶ 9).  But JLRNA would not agree to finalize the Settlement until the fee issue was resolved.  As a result, negotiations continued.  The parties met with mediator Nancy Lesser and convened multiple extensive telephone conferences. (Jt. Decl., ¶¶ 9, 10).  When the fee issue could not be resolved, the parties continued mediation before Magistrate James B. Clark.  After multiple sessions with Judge Clark, the issue was finally resolved. (Jt. Decl., ¶ 10).

### B.   The Requested Award Is Presumptively Fair and Reasonable since it will not Diminish the Settlement Fund.

The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible.  As the United States Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437; *see also Johnson v. Georgia Hwy. Exp., Inc.*,

488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). Accordingly, courts regularly approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount does not decrease the benefit obtained for the class. *See LG/Zenith*, 2009 WL 455513, at *8-9 (approving agreed upon attorneys' fee award that did not diminish settlement fund); *In re Ins. Brokerage Antitrust Litig*., 2007 WL 1652303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009)); *In re Prudential Ins. Co. of Am. Sales Practice Litig*., 106 F. Supp. 2d 721, 732 (D.N.J. 2000) (finding it significant that attorneys' fees would not diminish settlement fund); *see also McBean*, 233 F.R.D. at 392 (granting class counsel full amount of fees agreed to by defendant where attorneys' fees were separate from class settlement and did not diminish class settlement); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (same); *Bezio v. Gen. Elec. Co*., 655 F. Supp. 2d 162, 167-68 (N.D.N.Y. 2009) (same); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15-16 (S.D.N.Y.

May 1, 2008) (same); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) (same).

Here, JLRNA agreed not to object to paying Class Counsel a fixed sum of $700,000.00 in attorneys' fees and case expenses in connection with the relief obtained for the class, subject to the Court's approval. This award of attorneys' fees and case expenses, together with the proposed class representative awards are completely separate and apart from the relief available to the Class and do not reduce the relief to the Class in any manner (Jt. Decl., ¶¶ 10, 25). As noted previously, attorneys' fees were not negotiated or discussed until after agreement was reached between the Parties on all other terms of the settlement. Jt. Decl. ¶¶ 9-10

Because the fee arrangement in this case was negotiated by experienced counsel at arm's-length, judicial deference to the parties' fee agreement is warranted. *See In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("[W]ith regard to attorneys' fees[,] ... the presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval,' even if it is 'not binding on the court.'") (quoting *Weber v. Gov. Emples. Ins. Co.,* 2009 U.S. Dist. LEXIS 91322, *53 (D.N.J. Sep. 30, 2009)).[6]

---

[6] *See also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); *In re Apple Computer, Inc. Deriv. Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement."); *Cohn v. Nelson*, 375 F. Supp. 2d. 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference

As explained in *McBean*, 233 F.R.D. at 377, a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund. "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," the court reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." *Id*. at 392. "If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Id*. The *McBean* court concluded that the parties' agreement for attorneys' fees was objectively reasonable because it was the product of arm's-length negotiations. *Id*.

Class Counsel's requested award of $700,000.00 in connection with conferring a substantial benefit on the class is presumptively reasonable where that award will not diminish the settlement fund.

### C.    The Factors Governing Approval of Attorneys' Fees and Expenses Support the Requested Amount

#### 1.    Class Counsel Obtained a Substantial Benefit for Settlement Class Members

The reasonableness of attorney-fee awards in class action cases are traditionally viewed under the factors enunciated in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see In re AT & T Corp.*, 455 F.3d 160,

166 (3d Cir. 2006).[7]   "'Attorneys' fees are awardable even though the benefit conferred is purely nonpecuniary in nature.'"   *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *15 (quoting *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 169-70 (3d Cir. 1975)).

The first *Gunter* factor, as relevant here (*i.e.*, the number of persons benefitted), plainly weighs in favor of approving the requested attorneys' fees and expenses. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 108 (D.N.J. 2018) ("The first *Gunter* factor 'consider[s] the fee request in comparison to . . . the number of class members to be benefitted.'") (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). Approximately 152,887 class notices were sent to Settlement Class Members, who received direct notice. The settlement website (at www.schmidttimingchainsettlement.com) will further ensure that thousands more will be informed of their settlement rights. As outlined *supra*, and detailed in the Settlement Agreement at § 3 ("Consideration for Settlement"), this Settlement

---

[7] The *Gunter* factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See Gunter,* 223 F.3d at 195 n.1. One factor—the presence or absence of objectors—is irrelevant at this juncture. The deadline for filing objections is not until January 18, 2022. As such, Plaintiffs will respond separately to any objections and/or opt-outs with supplemental memoranda filed pursuant to the deadlines set in the Preliminary Approval Order.

provides a substantial benefit to the class.  Settlement Class Members will receive an extension of warranties for the timing chain components for Settlement Class Vehicles, including reimbursement for out-of-pocket costs for repair or replacement of the timing chain assemblies at the tiered amounts set forth in the Settlement (*see* charts, *supra*); *see* Settlement Agreement at § 3.  The warranty extension period is to one hundred thousand (100,000) miles or for a duration of eight (8) years from their Class Vehicle in-service date, whichever occurs first, and covers repair and replacement of the primary timing chains, timing chain tensioners and tensioning levers.  If the Class Vehicle received a diagnosis of a timing chain failure by an authorized JLRNA dealer, but was not repaired, the vehicle would still qualify for repair under the Settlement provided that the *diagnosis* was within the 8 years or 100,000 miles (that is, even if the actual repair is done beyond the time or mile limitation).

Class Counsel negotiated a meaningful settlement for Settlement Class Members that confers real benefits.  Given the inherent litigation risks in this putative nationwide class action, the benefit is highly significant as it provides substantial tangible benefits without the risks and delays of continued litigation. This *Gunter* factor favors approval of the request fee. [8]

---

[8] Because Settlement Class Notices have just issued to the Class, the *Gunter* factor concerning objections, if any, will be further addressed in Plaintiffs' subsequent submission in support of approval of the Settlement and/or a supplemental submission on this motion.

## 2.     Skill and Efficiency of Counsel:  Class Counsel Brought This Matter to an Efficient Conclusion

Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved. *In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 132 (D.N.J. 2002) ("the single clearest factor reflecting the quality of the class counsels' services to the class are the results obtained").  The quality of the work which has been presented to the Court, the undersigned believe, speaks for itself.  Faced with the substantial risk of further litigation, as discussed above, Class Counsel's results here are substantial. Class Counsel have delivered a significant benefit to the nationwide Class in the face of numerous potentially fatal obstacles.  Moreover, because vehicles tend to depreciate over time and generally may not remain in the class member's possession after a period of time, the fact that this Settlement was achieved within approximately a three year period is significant and allows a greater number of Settlement Class Members to immediately benefit from the Settlement.

That a case settles as opposed to proceeding to trial "in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Gunter*, 223 F.3d at 198.  In

achieving the Settlement, Class Counsel invested significant time and worked for three years to bring this class action settlement to fruition.   *See* Jt. Decl. ¶¶ 12-13; *see also* Graifman Decl., ¶ 2.

Class Counsel have substantial experience litigating large-scale class actions and multidistrict litigations.  The Agreement is an extremely favorable resolution for the Class given the risks attendant with continued litigation.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel.  *See In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 941, 970 (E.D. Tex. 2000).  Defendants were ably represented by counsel from Hogan Lovells US, LLP and Fox Rothschild, LLP, both of whom are experienced and seasoned attorneys known for their success in civil litigation matters, particularly consumer products liability class actions involving automobile defects.

Class Counsel's ability to obtain the Settlement for the Class in the face of a formidable opponent further confirms the high quality of Class Counsel's representation.  Accordingly, Class Counsel respectfully submit that this *Gunter*

factor, recognizing the skill and efficiency of the attorneys involved, strongly supports their application for fees in the requested amount.

### 3.     The Complexity and Duration of the Litigation

This *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 768 (quoting *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 801 (3d Cir. 1974)). Plaintiffs' complaint here faced considerable legal and factual hurdles absent settlement. "[E]ven [though] Plaintiffs' Complaint survived Defendants' motion to dismiss, their case would have faced additional legal and factual hurdles on summary judgment, at trial, and potentially on appeal." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) (citation omitted). Continued litigation likely would have been very costly for both parties. Even if Plaintiffs recovered a large judgment at trial on behalf of the Settlement Class Members, actual recovery likely would be postponed for years. There is also the substantial possibility that Plaintiffs would recover nothing. The Settlement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now." *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016). Thus, this *Gunter* factor weighs in favor of approval of the requested fee award.

### 4.     Class Counsel Undertook the Risk of Non-Payment

Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no, or very little recovery and leave them uncompensated for their time as well as for their out-of-pocket expenses.  Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Warner Communications*, 618 F. Supp. at 747-49 (citing cases).  As one court noted:

> Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income Partnerships Securities Litigation*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994); *see also In re Ocean Power Techs, Inc.,* 2016 WL 677218, at *28 ("Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.") (citation omitted); *In re Schering-Plough Corp. Enhance ERISA Litig.,* 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.") (citations omitted). Class Counsel litigated this case for approximately three years to date without compensation and shouldered the risk that

the litigation would yield little to no recovery.  Despite the litigation risks, Class Counsel were able to forge a resolution that provides significant present relief to the Class within a relatively modest time period (even taking into account delays due to the Covid-19 pandemic).  There is little doubt that Class Counsel undertook a significant risk here and the fee award, respectfully, should reflect that risk. Accordingly, this *Gunter* factor weighs in favor of approving the attorneys' fee request.

### 5.    Class Counsel Devoted Significant Time to this Case

The next *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199.  Since the inception of this case, approximately 922.70 hours of attorney and other professional/paraprofessional time were expended. Jt. Decl., ¶¶ 26-27; *See also*, Graifman Decl., ¶¶ 3-6; Sobran Decl., ¶¶ 5-6.  Based on past experience with consumer automotive products liability defect class actions, including managing the settlement process of such matters, it is estimated that each firm will spend an additional approximately 130 hours between now and the final conclusion of the Action working on future necessary activities. (Jt. Decl., ¶¶ 26, 27, 32).[9]  The necessary future anticipated work includes interacting with Settlement

---

[9] *See Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1029-30 (9th Cir.1998) recognizing that class counsel should be entitled to payment for the future work required of them. ("Class counsel presented affidavits to the district court justifying their fees on the basis of their work on the individual state class actions.  The fee award also includes all future services that class counsel must provide through the life of the latch replacement program.  They must remain available to enforce the contractual elements of the settlement agreement and represent any class members who

Class Members seeking guidance and posing questions via phone and email as to the Settlement terms, the claims process and the rights and remedies of Settlement Class Members going forward under the Settlement; the status of submitted claims; assistance with curing deficient claims; the administrative appeal process and attorney review of claim denials; assisting class members requesting exclusion; addressing objections, if any, with respect to the Settlement; coordinating with defense counsel and the Settlement Administrator, Angeion Group, as to issues concerning claims and payments; reviewing and addressing miscellaneous administrative issues that are certain to occur; overseeing the final distributions and administration; addressing any questions or issues raised by Settlement Class Members in relation to the prospective warranty extension; researching, drafting, revising and finalizing the final approval motion papers; addressing any issues in connection with the final approval motion and final approval reply papers; and, attending the final approval hearing before the Court. *See* Jt. Decl., ¶ 32.

To date, the time incurred by Class Counsel has included, *inter alia*: the time spent in the initial investigation of the case; researching complex issues of law; preparing and filing the initial complaint; reviewing documents produced by JLRNA; working with expert witnesses; engaging in hard-fought settlement

---

encounter difficulties.  The factual record provides a sufficient evidentiary basis for the district court's approval of the fee request.").

negotiations; Settlement documentation; preparing the opposition to JLRNA's motion to dismiss; and researching and briefing issues relating to the preliminary and final approval of the Settlement as well as a plethora of other required work (*see* Graifman Decl., ¶ 2; Sobran Decl., ¶ 3).[10] The accumulated hours are reasonable for a complex class action case. As noted, Class Counsel's submission today estimates the anticipated future time spent going forward—both in preparing and presenting arguments on final approval, defending the settlement from any objections and/or appellate or other attacks that may result, or assisting Class Members with the claims process and the prospective warranty program which will be ongoing after the

---

[10] These also include vetting communications with clients, prospective class members and class members; researching and drafting portions of the memorandum of law in opposition to motion to dismiss; preparation of documents for service upon Jaguar Land Rover Automotive PLC; attending court conferences and argument on motions before the court; negotiating the agreement concerning perimeters of the discovery from JLRNA; submission of *pro hac vice* application of co-counsel; receiving and reviewing document production from defendants; contacting and reviewing the matter with experts; settlement conferences and litigation strategy with co-counsel; settlement conferences with all parties; preparing for mediation sessions; research and review of file materials to prepare pre-mediation briefing; submission of pre-mediation materials; attend mediation session with Nancy Lessor; preparation and negotiation of term sheet in connection with substantive settlement; preparing for mediation session with Magistrate Judge James Clark; legal research, review of file, review comparable settlements in PACER and Westlaw databases; research, write and edit pre-mediation submissions for Judge Clark; attend mediation session with Judge Clark; prepare, review and revise settlement agreement; review, revise and negotiate language for Settlement Agreement exhibits (draft class notice, settlement claim form, Preliminary Approval Order and proposed Final Approval Order); conferences with counsel for JLRNA regarding settlement documents; preparation of Preliminary Approval Motion and joint declarations of counsel in support thereof; coordinate and complete exhibits to Motion for Preliminary Approval; prepare, revise and finalize memorandum of law in support of Preliminary Approval Motion; finalize and submit Preliminary Approval Motion; coordinating with court-appointed claims administrator on drafts and finalize the class communications and settlement class notices, settlement claim form and claims deficiency notices.

Settlement approval for approximately another two years.  *See*, *Hanlon*, 150 F.3d at 1029-30.

Thus, this fifth *Gunter* factor weighs in favor of approving the attorneys' fees request.

### 6.    Awards in Similar Cases

With respect to the last *Gunter* factor, the $700,000.00 award requested is modest and is less than comparable awards approved in similar cases.  *See  In re Volkswagen Timing Chain Product Liability Litigation,* Civil Action No. 16-2765-JLL (D.N.J.) (awarding attorneys' fees of $8.6 million, representing a 1.8 multiple of lodestar);  *Coffeng v. Volkswagen Group of America*, Inc., Civil Action No. 2:17-cv-01825-JD (N.D.Cal.) (approving award of $2.4 million in water pump defect class action settlement (ECF Dkt. No. 106), representing a multiple of 2.09);  *Gelis, et al v. BMW NA,* 17-cv-7386-SDW-CLW (D.N.J.) (approving award of legal fees and expenses in sum of $3.7 million (ECF Dkt. No. 173, entered May 7, 2021)); *See also In re Volkswagen & Audi Warranty Extension Litig*., 692 F.3d 4, 22 (1st Cir. 2012) (an engine defect/warranty case, in which the First Circuit directed the lower court on remand to use "the base lodestar figure of $7,734,000" for calculating fees for class counsel where settlement paid, among other benefits, for engine repair or replacement costs and warranty extension for vehicles); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 166-71 (D. Mass. 2015) (on remand,

granting enhanced fees of $15,468,000.00, using base lodestar of $7,734,000.00, where settlement resolved claims of improprieties in automobile manufacturer's warranty extension and reimbursement program, and involved allegations of engine defects); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 750-51 (E.D. Tex. 2007) (granting adjusted lodestar of $9,500,000.00 where proposed settlement provides class members with lease and warranty extensions based on defective odometer claim).

Even deducting the anticipated additional 130 hours from the analysis, the *current* combined lodestar of $682,796.50 involves no positive multiple, and is a slight negative multiplier.  Jt. Decl., ¶¶ 27, 33.

### D. The Value of the Settlement and of the Benefit Conferred Demonstrates the Fee should be Approved.

The repair of the timing chain for a Class Vehicle here is an arduous process given the location of the timing chain in the engine.  The repair is, therefore expensive, averaging about $5,000.00 per timing chain assembly repair/replacement, *without* engine damage included in the calculus. Jt. Decl., ¶ 21. In Class Vehicles reporting engine damage as a result of the timing chain failure, estimates have been reported for repairs as high as $20,000.00 or higher. *Id.*  The value of the reimbursement program of this Settlement is significant, notwithstanding that the number of Class Vehicles is relatively modest.

Class Counsel estimated the value of the Agreement's components based in part on documents provided by JLRNA including the incident rate during the warranty period.[11]  (Jt. Decl., ¶¶ 21-22).  While the incident rate for failures after the basic warranty's expiration would likely be higher than the incident rate for in-warranty Class Vehicles, as the age and mileage of the vehicles increases, in coming to a conservative analysis, Class Counsel employed the *same incident rate* as experienced in-warranty by Class Vehicles which received timing chain and timing chain tensioner replacement under the original new vehicle warranty or as customer good will.  Based on the number of Settlement Class Vehicles (50,897), the use of the conservative incident rate, and the $5,000.00 average cost of repair if all of those vehicles requiring repair averaged the $5,000.00, and, in addition using the middle tier for the percent of reimbursement-- which under the Settlement is 50%-- the amount on average returned to those Settlement Class members making reimbursement claims (*e.g.* at time of repair were in-service for less than 8 years or less than 100,000 miles) or taking advantage of the prospective warranty program, is approximately $3,867,500.00.  This is based on the estimate that approximately 1,547 Class Vehicle owners/lessees will submit qualified claims or take advantage of the prospective warranty program.  (Jt. Decl., ¶¶ 21-22).  Notably, this *does not*

---

[11] Because the information provided by JLRNA is subject to a confidentiality agreement, it is not specified here, but can be made available to the Court under seal if requested.

include the cost of repair of engine damage or the value of the extended warranty itself, which adds a right for owners which is transferable on sale of the vehicle, and has an intrinsic value.[12]   Thus, Class Counsel believe that the total value of claims herein would likely be, *at minimum*, equal $3,867,500, and assuredly exceed that given the fact that numerous vehicles will also have had (or under the prospective warranty program will have) engine damage, a portion of which is also covered under the Settlement .,.   The estimated valuation of the Settlement more than supports the requested fee based on a percentage of the common benefit conferred (*e.g.*, based on a claims value of $3,867,500.00). the fee portion of the request of $700,000.00, is $671,830.13 in fees after deduction of expenses in the sum of $28,169.87.  This is a modest 17.37% of the Settlement's value).

### E.  Class Counsel's Lodestar Demonstrates the Requested Fees and Expenses are Fair and Reasonable

In addition to analysis under the benefit-conferred methodology supporting the fee and expense award requested, the lodestar analysis in the within action also more than reasonably supports the requested fee and expense award.  In determining the reasonableness of the lodestar, the Court need not engage in a "full-blown lodestar inquiry." *In re AT&T Corp.*, 455 F.3d at 169 n.6.  Where there have been no objections to the lodestar calculations, "a full-blown lodestar analysis is an

---

[12] *See Saini v BMW of N. Am., LLC*, Civ. Action No. 12-6105 CCC, 2015 WL 2448846, at *17 (D.N.J. May 21, 2015).

unnecessary and inefficient use of judicial resources." *Dewey v. Volkswagen of America*, 728 F.Supp.2d 546, 592 (D.N.J. 2010). To calculate the lodestar amount, counsel's reasonable hours spent on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Here, the lodestar method confirms the reasonableness of the percentage fee being sought as the lodestar represents negative multiplier.

Class Counsel incurred, and will continue to incur additional time in connection with the continued work in this case. Class Counsel have currently spent approximately 922.70 hours on this Action in shepherding it through to the current stage. Based on current rates, the total current lodestar of Class Counsel is **$682,796.50** (*see* Jt. Decl., ¶¶ 26-27).

Counsel anticipates and has included a calculus that adds the additional 130 hours of future time as well for each firm, which is needed to continue to reach Final Approval and oversee the continued administration of the Settlement over the next two years approximately. That brings the total lodestar to $898,086.50. Jt. Decl. ¶¶ 26-27. The hours incurred and to be further incurred were on matters for the benefit of the litigation and in representation of the Settlement Class. The tasks required are outlined in detail *supra* at pp. 28-29 and n.10. Given the effort expended and the complexity of the legal and factual issues involved and the result achieved, the hours incurred (and to be incurred) are entirely reasonable.

The hourly rates vary appropriately between attorneys and paralegals, depending on the position, experience level, and locale of the particular attorney. The rates for each individual attorney and paralegal are set forth in Class Counsel's Declarations and in the charts and exhibits to the Declarations. Jt. Decl., ¶¶ 28-31 and n.11; Graifman Decl., ¶¶ 3,5 and Exh. 1; Sobran Decl., ¶¶ 6-7 and Exh. 1. As noted in footnote 13 of the Joint Declaration, the attorney fee award approved in the *Coffeng* matter, was based on Graifman's hourly rate submitted in the *Coffeng* matter at $895.00 per hour. Mr. Sobran's rate of $750.00 per hour was also approved in the *Coffeng* attorneys' fee award. In addition, Mr. Graifman's then-current hourly rate of $850.00 per hour was approved by Judge Linares in *In re: Volkswagen Timing Chain,* as was Mr. Sobran's rate of $750.00 per hour. The lodestar rates requested here are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the attorneys. *Gunter*, 223 F.3d at 195.

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's requested rates are reasonable. Altogether, this yields a collective current lodestar based solely on the time for Class Counsel of approximately **$682,796.50** in lodestar, and a total of $28,169.88 in expenses which will be paid entirely from the single $700,000.00 fee award sought.

Notably, this does not account for the additional time that remains to be expended by Class Counsel to bring this litigation to conclusion. As the Court is aware, counsel's work will continue through the claims process and beyond as class members seek guidance in the claims process and the prospective warranty portion of the Settlement.

Deducting the expenses of $28,169.88 first from the $700,000.00 fee and expense request, the fee portion remaining is $671,830.12. (Jt. Decl., ¶ 33).

The present lodestar represents a current slight negative multiple. *Id*. If the additional time anticipated to be devoted to the matter is included (*e.g.,* approximately 130 hours for each firm) the lodestar request represents an even more negative multiple of twenty-five percent (25%) less.

## V. THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE APPROVED

Service awards for class representatives promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The efforts of the Class Representatives were instrumental in achieving the Settlement on behalf of the Class and justify the awards requested here. The Class Representatives came forward to prosecute this litigation for the benefit of the class as a whole. They sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow class members. The Class Representatives provided a valuable service to the class by: (a) providing

information and input in connection with the drafting of the complaint; (b) overseeing the prosecution of the litigation; (c) participating in early initial discovery; (d) consulting with counsel during the litigation; and (f) offering advice and direction at critical junctures, including the Settlement of the Action. A $2,000.00 incentive award for each of the Class Representatives in recognition of their services to the Class is modest under the circumstances, and well in line with awards approved by federal courts in New Jersey and elsewhere. *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.") (quoting *Cullen*, 197 F.R.D. at 136); *McGee*, 2009 WL 539893 at *18 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C.2002)) ("Incentive awards are 'not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.' "); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D.Pa. 2009) (awarding representative plaintiffs incentive payments in the amounts of $10,500.00 and $5,000.00, for a total of $115,000.00, finding those amounts to be "reasonable compensation considering the extent of the named plaintiffs' involvement and the sacrifice of their anonymity."); *Bezio*, 655 F. Supp. 2d at 168 (incentive awards in the amount of $5,000.00 each are "within the range of awards found acceptable for

class representatives."). Here, as with the negotiated fee-and-expense award, the incentive awards of $2,000.00 to each Class Representative are particularly uncontroversial and no deduction from the Settlement payments to class members will be made to make such payment. Plaintiffs and Class Counsel respectfully request that the incentive awards provided for in § 13.1 of the Settlement Agreement be approved.

## VI. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to being entitled to reasonable attorneys' fees, it is well-settled that prevailing Plaintiffs' attorneys are "entitled to reimbursement of reasonable litigation expenses." *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121185, at *26 (E.D.Pa. Oct. 19, 2011) (citing *In re GMC Pick-Up Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 820 n.39); *see also In re Safety Components Int'l, Inc.*, 166 F. Supp. 2d 72, 108 (3d Cir. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

Class Counsel's out-of-pocket expenses incurred in this litigation currently total approximately $28,169.88. Jt. Decl. ¶ 35; *see also* Graifman Decl., ¶¶ 8-9 and Exh. 2; Sobran Decl., ¶ 8 and Exh. 2. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as court

filing fees, copying fees, computerized research, travel in connection with this litigation, mediator fees, discovery expenses and similar costs.  All of the expenses incurred were reasonable and necessary for the successful prosecution of this case and should be approved.  Class Counsel will incur additional expenses on this case going forward, including working with the Claims Administrator, communicating with Settlement Class Members, and research with respect to the Final Approval Hearing.  As a part of their Settlement Agreement, the parties agreed that Plaintiffs would seek attorneys' fees and reimbursement of expenses not to exceed a total of $700,000.00.  Class Counsel requests the Court approve this amount.

## VII.    CONCLUSION

Plaintiffs respectfully submit that the award of attorneys' fees and reimbursement of expenses are justified and are fair, reasonable and adequate. Similarly, Class Representative Service Awards are fair, reasonable and adequate. Accordingly, Plaintiffs respectfully submit that the request for attorneys' fees and reimbursement of expenses and the service fee award all be approved in the amounts requested.  A proposed Final Order and Judgment will be submitted upon filing of the Motion for Final Approval of the Settlement.

_____
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
jbrody@kgglaw.com

Thomas P. Sobran, Esq.
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
tsobran@sobranlaw.com
(admitted *pro hac vice*)

***Attorneys for Plaintiffs***

Dated: January 4, 2022